498 So.2d 478 (1986)
DOCTORS' OSTEOPATHIC MEDICAL CENTER, INC., d/b/a Gulf Coast Hospital, Inc., Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES and Lee Memorial Hospital, Appellees.
LEE MEMORIAL HOSPITAL, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES and Doctors' Osteopathic Medical Center, Inc., d/b/a Gulf Coast Hospital, Inc., Appellees.
Nos. BG-117, BG-197.
District Court of Appeal of Florida, First District.
October 6, 1986.
Rehearing Denied December 30, 1986.
*479 Leonard A. Carson and John D.C. Newton, II, of Carson & Linn, P.A., Tallahassee, for Doctors' Osteopathic Medical Center, Inc. d/b/a Gulf Coast Hosp., Inc.
R. Bruce McKibben, Jr., Asst. Gen. Counsel, Tallahassee, for Dept. of Health and Rehabilitative Services.
Ivan Wood, Jr., and Gary M. Reibschlager and Herbert T. Schwartz of Wood, Lucksinger & Epstein, Houston, Tex., for Lee Memorial Hosp.
BOOTH, Chief Judge.
This cause is before us on appeal and cross appeal from a final order entered by the Department of Health and Rehabilitative Services (HRS), rejecting the hearing officer's finding of need for a 120-bed osteopathic facility in Fort Myers, and holding that there is a need for a 60-bed osteopathic facility.
The only issue which merits discussion is appellant's argument that HRS inappropriately changed the hearing officer's recommendation for 120 beds to 60 beds. We agree with appellant and reverse. Additionally, pursuant to Section 120.57(1)(b)9, Florida Statutes (Supp. 1984), we find that under the totality of circumstances which exist in this case, the conduct of HRS was sufficiently egregious to reach the level of a "gross abuse." Therefore, we remand to HRS to request the Division of Administrative Hearings (DOAH) to assign a hearing officer to conduct a hearing for the purpose of developing an evidentiary record, applying the standards announced in Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985), from which we can determine the amount of fees and costs to be awarded appellant. University Community Hospital v. Department of Health and Rehabilitative Services, 493 So.2d 2 (Fla.2d DCA 1986).
In 1979, Gulf Coast Hospital, Inc. (Gulf Coast) applied for and was denied a certificate of need (CON) to construct a 116-bed acute care osteopathic facility in Fort Myers. Gulf Coast requested an administrative hearing. Subsequently, the hearing officer recommended denial of the CON, and this recommendation was adopted by the agency. On appeal, this court reversed and remanded for the agency to issue Gulf Coast a CON and to authorize "such sized facility as the evidence already adduced or further evidence which may be adduced establishes," because this court determined that a CON for the osteopathic facility should have been granted but that there was insufficient statistical evidence adduced to establish bed need. Gulf Coast Hospital, Inc. v. Department of Health and Rehabilitative Services, 424 So.2d 86, 93 (Fla. 1st DCA 1982).
On remand, HRS granted Gulf Coast leave to amend its application. A revised application was filed, listing Doctors' Osteopathic Medical Center, Inc., d/b/a Gulf Coast Hospital, Inc., as the applicant. On May 31, 1983, HRS denied Gulf Coast's amended application. Gulf Coast petitioned for a formal administrative hearing and simultaneously sought a writ of mandamus from this court to compel HRS to issue the CON. Because Gulf Coast had an administrative remedy, this court denied the writ, allowing that the court would "accord HRS the opportunity to support and, if necessary, to correct its position, and the issues raised in these proceedings will be considered on appeal, if any, from the agency's final order." Doctors' Osteopathic Medical Center v. Department of Health and Rehabilitative Services, Case No. AT-335, order dated October 26, 1983.
Thus, the case proceeded before the Division of Administrative Hearings (DOAH). On February 17, 1984, DOAH entered an order holding that the sole issue for determination in this second hearing was the appropriate number of acute care osteopathic beds allowable, but included within the issue the question of whether such beds are osteopathic beds. By a prehearing stipulation entered into prior to the intervention of Lee Memorial Hospital or Naples Community Hospital, Gulf Coast *480 and HRS stipulated that the petitioner's proposed facility would be an osteopathic facility according to Section 381.494(2), Florida Statutes. Thus, the only issue for determination was the number of beds to which Gulf Coast was entitled.
To complicate matters, Manasota Osteopathic General Hospital (Manasota) applied to HRS for a CON to construct an osteopathic hospital in Sarasota County. HRS denied Manasota's application, and Manasota requested a formal administrative hearing in which Gulf Coast moved to intervene. On June 6, 1984, Gulf Coast learned that HRS intended to issue a CON to Manasota.
Pursuant to a petition for prohibition, this court filed a temporary stay. After oral argument, this court found that the facts did not necessitate the issuance of the extraordinary writ of prohibition. Instead, this court granted the alternative relief requested, i.e., "that a CON be granted to Gulf Coast in conformance with the mandate in Gulf Coast Hospital, Inc., supra, for the number of beds which the evidence supports, such evidence not to include the number of beds intended to be issued to Manasota, or to any other entity within the same district." Doctors' Osteopathic Medical Center, Inc. v. Department of Health and Rehabilitative Services, 459 So.2d 1063, 1066 (Fla. 1st DCA 1984).
To support its request for a 120-bed facility, Gulf Coast presented the testimony of an expert in the practice of osteopathy, an expert in auditing and accounting, two experts in the area of health planning, four osteopathic physicians practicing in Lee County, and numerous exhibits.
HRS presented the testimony of one expert in the area of health planning, along with several exhibits. The two intervening hospitals presented no witnesses, and each introduced one exhibit.
In part, the hearing officer found as facts (restated):
(1) (paragraph one of order) By the year 1988, there will be a need for 175 acute care hospital beds (a five-year horizon period is typically utilized for new acute care hospital beds).
(2) (paragraph five of order) HRS does not have a specific methodology for determining acute care hospital bed need.
(3) (paragraphs six, eight, and ten of order) Both methodologies presented by the parties, i.e., bed-to-population ratios and use rates (presented by Gulf Coast), and averaging statewide data from existing facilities and projecting them into the anticipated population of Lee County in 1989 (presented by HRS), have serious shortcomings.
(4) (paragraph six of order) Gulf Coast's experts predicted a range of between 191 to 239 beds in District VIII as a whole.
(5) (paragraph nine of order) HRS's expert predicted the need to be 60 beds.
The hearing officer recommended that Gulf Coast be granted a CON to construct an osteopathic facility consisting of 120 acute care beds in Lee County.
In its final order, HRS stated that Gulf Coast had failed to carry its ultimate burden of persuasion to entitlement of more than a 60-bed facility. Further, stating "DHRS has articulated its non-rule policy in the record. The hearing officer has adopted specific findings relating thereto. The rational basis for the policy, which is set forth, is neither arbitrary nor capricious." Accordingly, HRS awarded a CON for a 60-bed facility.
We reverse. Even when policy considerations are involved and the agency has displaced the hearing officer's recommended conclusions because of such considerations, it is the agency's duty to explain its policies and to address countervailing arguments developed in the record as well as those urged by the hearing officer's recommended order. Fraser v. Lewis, 360 So.2d 1116, 1118 (Fla. 1st DCA 1978).
In this case, the agency's statement that "DHRS has articulated its non-rule policy in the record" is wholly insufficient to support its decision to reject the hearing officer's recommendation of a 120-bed osteopathic *481 facility. In its order, HRS has failed to identify its nonrule policy and has failed to address the countervailing arguments in the record urged by the hearing officer's recommended findings and conclusions.
The hearing officer carefully considered and weighed the evidence, concluding that Gulf Coast had established the need for a 120-bed facility. The recommended order gives an in-depth analysis of each of the methodologies, relating the strengths and weaknesses of each methodology, and supports the hearing officer's recommendation that a 120-bed need had been established from facts set forth in the record.
In view of the record and the history of this case, no useful purpose would be served in remand for further consideration or explication by HRS. Accordingly, we hold that HRS erred in rejecting the hearing officer's conclusions and therefore remand for entry of an order in accordance with those conclusions, granting a certificate of need for 120 beds.
Motion for attorney fees is granted pursuant to Section 120.57(1)(b)9, Florida Statutes (Supp. 1984), as previously indicated, and the cause is remanded for a hearing on fees and for a report to this court in the manner directed in Purvis v. Department of Professional Regulation, 461 So.2d 134, 138 (Fla. 1st DCA 1984), within 45 days after the date of this opinion.
REVERSED and REMANDED.
SMITH, J., and RICHARD H. FRANK, Associate Judge, concur.